Case number 12-5167 and 12-5800, United States of America v. Kemper and Joe Edmund. Court order is not to exceed 10 minutes for each defendant and 20 minutes for each plaintiff. Ms. Erin Evans will now take the stand. Good morning, Your Honors. May it please the Court, I'm Amy Barron-Evans and I represent the appellant, Glenn Kamper, and I'd like to reserve two minutes for rebuttal. The District Court said in this case that the Supreme Court had authorized it in Kimbrough and Spears to reject a drug equivalency ratio and adopt a different ratio, but it held that it, quote, cannot exercise that authority because to follow these Supreme Court decisions would force it to violate the separation of powers. It also held that the authority is best limited to crack cases, contrary to a number of this Court's decisions and two decisions of the or deputize itself as a sentencing commissioner, it would not do so for institutional reasons, each of which has been rejected by the Supreme Court and this Court, which are mainly District Courts are not well-equipped to decide such matters. District Courts should defer to Congress and the Sentencing Commission, who are well-equipped to decide such matters, and if different judges adopt different ratios, it would cause unwarranted disparity. There certainly is some difficulty in figuring out what exactly the district judge did here, but at some point, didn't the district judge say that he would factor in this issue in the 3553A factors, and then he basically says, I'm not going to make any changes, and then sentences accordingly, and your client got a below-sentencing guidelines sentence anyway. Now, of course, it was factoring in various factors, but why should we send this case back to the district judge if given this unbelievable array of comments, he does say, I'm factoring it in under 3553A, and your client got 144 months below the sentence, and which is below the sentencing guidelines? Your Honor, I think it's important just to put the framework in place, which is probably obvious to everyone, but there are four different kinds of below-guidelines sentences, and each one is broader than the one before it. There's the departure power, there's the gall variance power, which is individualized facts, not a policy-based variance. That's broader than the departure power, and the district court said twice, or actually three times in his written opinion, that that's what he was doing. On page 600 and 605, he cited gall and said, I'm doing an individualized assessment of each MDMA defendant. The next broadest, of course, is Kimbrough, where the district court imposed a variance based on a policy disagreement, but didn't specify a ratio. Judge Jackson just varied down from 200 and some months to 180 months. Then the court decided Spears to make clear that there's yet another broader power, and that is the power to determine the extent of the variance based on a separate ratio. We know for sure that the judge rejected his power to do that last, most broad type of variance, and that he did so not on the merits, but for reasons that are totally, well, that are legally wrong under Moore, Vasquez, this court's decisions in Johnson, and by, there are a lot of Johnsons, but I mean 407 Federal Appendix 8, by Salas, Montague, and even Simmons. And Simmons, the panel said that it would be plain error if the court held or even intimated that it could not vary from a guideline range based on a policy disagreement. I'm not saying this, that we're subject to plain error review, but that's what the Simmons court said, that it would violate the Moore line of cases. So the district court, there are a lot of things were said. One thing that I want to point out is the government notes that there's a long discussion on the record about this issue, this motion. You will look in vain for any discussion of the merits. Throughout those 58 pages, the district court's discussion is all about why he does not think he should grant this motion, ranging from, you know, insisting that this is not a variance, but that Camper was asking the district court to actually promulgate a new set of guidelines. When you say there's no discussion of the merits, you mean of the merits of whether ecstasy should be treated the way it was treated historically or the way your client was arguing it should be. Correct. You know, there are a few cases in which this court has upheld a district court's refusal to vary, and one in an MDMA case, Tanavon. But in those cases, the judge addressed the motion on the merits. And in this case, the judge refused to address the motion on the merits for all of these, you know, for the reason that the Supreme Court had violated the separation of powers in issuing Kimbrough and Spears, and also for all of these institutional reasons. It looks, I know that you, there's some question, the government has suggested that, and not quite said, but suggested, and maybe your question, Judge Moore, also is getting at the same thing. Did the judge, in this case, grant a Kimbrough variance and not a Gall variance, the way he said? Did he take it into account the way the judge did in Kimbrough, but just not pick a different ratio? And I think there are some pretty strong indications in the record that he did not do that. He said, in the written opinion, under Kimbrough and Spears, if I disagree with the current ratio, I must, no, he said, I must not only disagree with the current ratio, but must adopt a new one. So it's very, based on that, you would think that the judge doesn't believe that he can do what we think of as a Kimbrough variance without adopting a different ratio. He does say, at some point, that he can do a 3553A variance. So are you saying that we have to say that he has to do a Kimbrough-Spears recalculation of a ratio, or what's wrong with what he did? I understand that his explanations are confusing at best, but assume that he did was to say, under 3553A, I think the ecstasy guidelines are a bit high, and I'm going to go down a little bit, and this is what I'm doing. Do we have to say that that is improper under the published jurisprudence that binds us? No, as long as the judge rejects or makes that decision on the merits. In other words, something like that happened in Tanavon, where the judge said... Pardon? What do you mean on the merits? Here, the judge declined to even consider the merits, to consider the substance of the argument. The merits being the validity of the... Yes, I wouldn't quite call it validity, but soundness. The soundness of treating ecstasy so heavily... So much more severely than even powder cocaine, when all of the evidence shows that it's less harmful than powder cocaine. You're right. How could he have considered that without making an express judgment, which he appeared to decline to make, that there was something wrong with the way the current guideline was calculated? How could he... Could you repeat that? How could he take it into account when he did the 3553 factors, when he didn't make any judgment about the validity of how they did the calculation? You mean, how could he have done what he said he did? In other words, if I wanted to say, I'm going to take into account, in my overall sentence, the fact that the guidelines are too high, doesn't he have to make some judgment about the validity of the guidelines? How do you take it into... How do you say they're too high, unless you make some rational judgment about the way they're formulated? It's completely mysterious, and what makes it even more mysterious in this case is that the judge went on at great length about how he was concerned that doing this type of variance might depend on how competent the lawyer was, or whether the lawyer presented the argument or not, and then he went ahead and sentenced every co-defendant without regard to this argument, whether they raised it or not, and made no explanation of why it purportedly made a seven-month difference in Camper's case, but made no difference in the other's cases. I mean, I can't explain... Maybe I'm not answering your question, Your Honor. How about... Why isn't his errors as to law here harmless in the bottom line? Why isn't this all harmless error? Well, one reason is, if... The judge clearly said, I do not... I am not recognizing my authority... He obviously made errors of law, but why isn't the bottom line... The 35-to-1 ratio would result in a 63-to-78 guideline sentence. Well, if he disregards the guidelines anyway and says that I'm going... Well, the ultimate sentence is what we're looking at here. Yes. He gave a seven-month variance, and maybe it would help put it in perspective to look at what he did in McElhaney. This judge repeatedly said on the record and in the written opinion that he was following McElhaney. Can you give me a quick answer why this is not harmless error? It's not harmless error because this court does not uphold sentencing errors unless it's certain that the error was harmless. The judge actually said, if anything, he said positive things about the substance of the argument and told the government and sort of brushed off the government's few arguments in support of the ratio. But he said, I can't do that. I won't do that, and I can't do that. Thank you very much. Can I just... Oh, yeah. You're not arguing that he had to do with no or nothing? No, Your Honor. We're simply arguing that... When I read his opinion, he was operating on the assumption that you were asking that he was required either to... If he was going to reject what the commission had done, he had to set a new ratio himself. He believed that's what Kimbrough and Spears said. What was your... Mistakenly. Your argument... Were you arguing for a one-to-one? We argued... She argued for a one-to-one or a thirty-five-to-one, and there was no statement that the court must do this or nothing. Nothing of that kind. So much... That would mean that much of what the judge said was irrelevant. I mean, he said that on policy... Even if Kimbrough and Spears permitted a district judge to reject an equivalency ratio in the guidelines on policy grounds and substitute a new ratio for a rejected one, the court would not exercise that power here. But then the arguments that he makes afterwards suggest that he thinks those are the only two alternatives. I think he's using the written opinion to explain, as he said on the record, to expand upon the reasons he gave in open court. And the reasons in open court for denying the he makes other statements in that opinion and elsewhere that he's relying on his McElhaney framework, although he doesn't have the data to rely on the McElhaney framework. Or he's relying on Gaul. You look... I'm not answering your question again. Thank you. Thank you. Good morning, and may it please the court, Alison Ellard on behalf of Defending Joe Head. I'd like to reserve two minutes of time for rebuttal, if I may. Mr. Head is presently serving 10 years in federal custody in connection with his role in this MDMA conspiracy. And he raises a number of challenges to his sentence, and I'd like to focus on two of those this morning, the aggravated role enhancement and the procedural reasonableness of his sentence. Turning first to the role enhancement, the district court added three points to Mr. Head's base offense level, what amounted to a minimum of three years to his sentence, based on its finding that he was a supervisor or manager in this conspiracy. Now, the problem with that was the district court applied the wrong legal standard to enhance Mr. Head's sentence. The text of the applicable sentencing guideline, 3B1.1, as well as this circuit's case law, requires a finding that the defendant supervised or managed another participant in the criminal venture. And here, instead, the district court concluded that Mr. Head, along with his co-conspirators, Mr. Camper, the ringleader of the conspiracy, and Mr. St. Onge, all jointly co-managed the or managed another participant. So your client was the chemist, is that right? The one who knew how to do the chemical procedures? That is what his co-conspirator, Mr. St. Onge, identified him, the role that he played in the conspiracy, yes. So wasn't there evidence that occasionally Mr. Head would let, would have the others doing sort of menial parts of the chemical procedures? That is what Mr. St. Onge testified, Your Honor, and you used a very important word there, which is menial. Mr. St. Onge was the government's chief witness at trial fingering Mr. Head in the conspiracy. And he did say that on the two or three times he was present for the making of MDMA, he performed these menial tasks, which he described as providing an extra hand to hold heavy things and cutting up little pieces of aluminum foil. So why isn't that enough to provide some basis for the district judge saying that Mr. Head managed Mr. St. Onge? Now, I know the district judge didn't say that explicitly the way I just said it, but isn't it enough evidence to support the conclusion of three points increase here? I don't think it is for at least three reasons. First, Mr. St. Onge never testified that Mr. Head directed or instructed him to perform these menial tasks. You'll search the record in vain for any testimony from Mr. St. Onge that he was carrying out Mr. Head's instructions to him. Second, the district court found that Mr. St. Onge was essentially Mr. Head's co-equal manager in the conspiracy. For lack of a better word, they occupied the same position on the criminal flow chart, so to speak. So it seems inconsistent to me with that finding to then say that Mr. Head was in a position to supervise or manage his peer, his colleague in this undertaking. And then third, I would argue to the court that it's important to consider the nature of these menial tasks that Mr. St. Onge testified to. Again, this was a three point enhancement on the sentence. It amounted to three additional years to Mr. Head's period of incarceration. And I don't think it's at all clear that the guideline was intended to be triggered under the circumstances of holding things that are heavy and cutting up little pieces of aluminum foil. When you see the guideline enhancement arise in the case law, it really comes up in circumstances in which the defendant recruited others to criminal activities. In drug cases, you see it where the defendant provides instructions to participants and to whom and on what terms they should sell drugs or instructs them to obtain precursor chemicals and the like. So I think there's a real question here as to whether what Mr. St. Onge testifies to having done really crosses that threshold to support the enhancement of Mr. Head's sentence in this way. Can I ask you one quick question? I don't mean to throw you off. He got the same sentence as Kemper. That's right. 144 months. That's right. I believe the judge said that he was the most culpable because he was the one who knew how to make it and not everybody knows how to make meth. And more culpable than say someone who was the money person. Is there any difference between the sentence, any basis to distinguish between the sentence that Head got and Kemper got? Well... As I do it quickly, they both got obstruction of justice. Right. They both, neither of them got two points of acceptance of responsibility and they both got the same role in terms of leadership or management, whatever it is. So essentially there's no basis. They basically got it in terms of the guidelines. It was the same guideline range and they both got the same sentence. That's right. It does seem as though there's a disparity argument there. I think that really goes to the substantive reasonableness of the sentence and here certainly the trial record and the sentencing record indicate that Mr. Kemper was the ringleader of this conspiracy. He brought the other participants, Mr. St. Onge and Mr. Head together. He provided the financial backing. He arranged for the house in northern Georgia where the ecstasy was being... I thought the judge said that your client was the most culpable because he was the only one who knew how to make it. Well... The others couldn't have done anything without him. That is certainly what the district court found and our view of that is that the district court really excessively focused on Mr. Head's technical abilities here to the exclusion of other relevant sentencing factors. So you're certainly correct that that's what the district court found and we think that's problematic as a matter of the substantive reasonableness of the sentence because there were all these other aspects of Mr. Head's background and personal characteristics that the district court appears to have ignored. And that really... Can you review those findings under a clearly erroneous standard? Which findings are you referring to, your honor? What you're talking about. Well the substantive reasonableness of the sentence would be reviewed under an abuse of discretion standard. The findings of whether he's a supervisor or not for the purposes of the guidelines. I think after this court's decision, I believe just a few months ago in the Washington case, that it is a clearly erroneous standard of review, but I would argue here it really doesn't make a difference because the district court didn't make the necessary factual finding in the first place to support the enhancement. And so I think on that basis alone, it would have to go back to the district court to make the necessary finding. It's expressed, it's not explicit. It's not explicit. He based it on Mr. Head's management of the conspiracy rather than any other participant. And even if... Judge, I mean, he can look at the evidence and the reasonable inferences from the evidence, can he not? He absolutely can. You don't have to have direct evidence to support the finding. He absolutely can. And you could come to the conclusion that one reasonable inference here is that Mr. Head, given his technical ability, must have been the person who was managing others. The problem with that, I think here, is that there's another reasonable inference in this record. Well, okay, but then is the reasonable inference that the district judge drew, is that clear error? Well, I think... Even though you could have drawn it the other way. I think in this case it is because there's a competing alternative inference that Mr. Camper was the person who was directing others. That's the call of the sentencing judge, isn't it? I think when a record reveals two competing alternative inferences, then it is clear error for a judge to go with one of those inferences when we're talking about a three-level enhancement to someone's sentence. Wouldn't the judge go with one of the inferences if the judge says, I'm going with that inference because... In other words, the judge says, I think that Head deserves the three points because he was managing St. Onge. But the problem is that we don't know right now that the judge actually applied the right standard because the judge says instead, I'm giving Head three points because he was a That's right. That's exactly what the district court said. It never makes a finding that he managed St. Onge or anyone else. And that's a particular requirement of this three-point enhancement. Absolutely. I see your red light is on. Thank you. Good morning. May it please the court. My name is Luke McLaurin and I'm here on behalf of the United States. The defendant's sentences in this case should be affirmed because the district court properly exercises discretion when sentencing both of these defendants. Discretion in what way? He exercises discretion. Well, I want to jump right to this, if it's okay with you, Judge Corman, to jump right to this MDMA to marijuana argument because there's a lot of discussion about it. And I agree with Judge Moore that this record is, there's a certain amount of confusion here as to what the district judge was thinking at times, but I think if you actually read through it in its entirety, particularly the sentencing transcript combined with the judgment, it's very clear that what was going on here is that the judge understood his authority under Kimbrough and Spears. And the judge was looking at the situation the way that I think any district judge should look at the situation in trying to assess the appropriate sentence under the 3553A factors. And I want to point out that the defendant has suggested there's like four different types of variances. There really is only one type of variance. She said four different types of considerations, one of which she started off with departure. So we really want to use the words properly. She wasn't using the word variance to talk about all four. Yeah, there, well, she said there's four different ways you can go below guidelines. I would actually argue that departure is not a below guideline sentence because a departure is something that occurs within the context of the guideline. So it actually is a guideline sentence, but it's a lower than otherwise would be applicable part of the guideline. Okay, so to cut to the chase, my question for you is this district judge gave so many different and apparently to me conflicting reasons. If I am not sure what this district judge was doing, why shouldn't I send this back with clear instructions to the district judge about how to deal with MDMA cases? I think it is clear what the district court judge did. And I think that the clearest place that you can find it in the record is if you look at page ID 1027 and 1028, the district judge was explicit in explaining what was going on. What's happening? This is in the sentencing transcript. And if you look at that where he says that the court explicitly, he recognizes, he says the court recognizes that it has the authority to impose a sentence outside of the guidelines. The court also specifically recognizes that it has the authority to impose a sentence outside of the guidelines based upon the criminal decision. And with that decision, the court recognizes it has the authority to adopt a ratio different from the ratio that is in the guidelines. The court then goes on and says, even though I have that authority to do that, I could also consider this argument in a different way. What I could also do, instead of adopting a new ratio, what I can do is consider the challenge to the legitimacy of this guidelines range as part of my overall calculus of whether this specific... How do we know that he did it? In his written opinion, he says, I'm reading from page 860-607-8, it may well be, as Camper argues, and as the thick binder of scientific articles Camper submitted suggests, that the current science has largely displaced the commission's findings on MDMA made in 2001. But the uncontroversial fact that scientific thinking on a given subject evolves does not render the commission's reliance on then current science in 2001 devoid of empirical support. If the science has changed, the commission should review the science to determine whether or not it continues to provide the empirical support. I mean, I don't know if a judge really believes that. How does he take it into account in an outside the guideline sentence? Well, I think what the judge did here, I mean, he explicitly indicated, and this is again going back to the sentencing transcript, on that page 1028 after... I don't want to interrupt you. What governs here? His statements at the time or when he sat down to, in effect, write an opinion in aid of our appellate jurisdiction? I think both govern and I think both are consistent in this case. I think if you read his opinion carefully, what you see going on is in the written opinion and in the transcript, the judge recognizes explicitly that he has this authority under Kimbrough and under Spears. He cites the correct cases. He states the rule from those cases correctly. He then decides that it would not be appropriate for him to exercise the authority to adopt a new ratio. And instead, what he says that the court will exercise its authority to use not a different ratio, but to determine that the guidelines based upon the ratio may result in a sentence that is greater than necessary to comply with the factors set forth in 3553. Where does he say that essentially the seven-month reduction, which is... He gives the same sentence to Head and to Kemper, even though he suggests that someone who is the money, supplies the money as Kemper was, is a little less culpable than Head. But where does he say that the seven months departure, whatever you want to call it, is due to his concern that there's no longer any empirical support for the guideline range that was adopted by the commission? Well, I think if you look at page 1042, page ID 1042 of the transcript, where the court is talking about the reasons for imposing the sentence, he says the court has concluded that the guideline in your case, based upon the drug quantity, is such that the court will determine another sentence is appropriate. However, then the court goes on to note, but the court also takes into account that your involvement with these defendants is much more serious than a typical leader or organizer. So I think that combined with the whole discussion, and I do want to directly respond to a point the defense counsel made there. They say that there's no discussion whatsoever of the quote-unquote merits. If you actually look at the transcript, there's some extensive discussion about the scientific validity, the continuing scientific validity of this MDMA to marijuana ratio, and it's in fact very skeptical of some of the government's arguments. So I think when you look at that, the judges... If the judge is skeptical of the government's arguments, why would the judge go down only seven months? The judge went down only seven months because of that second sentence that you see there on page 1042, because the judge said, even though the guideline in this case may be a little bit higher because of the drug quantity, there are other things about this case that suggest a higher sentence. So maybe if we didn't have these other things present, I might have gone down a little bit further. But this is a case where I'm particularly concerned that you, as an educated individual, as somebody who could have been leading these young men on a proper path, instead you chose to use your energy and your time and your talent to create this drug conspiracy. And the court found that a particularly significant factor. Is it your view that the judge wasn't influenced by the guidelines? I think that the judge... Giving the sentence that he gave. I think the judge was influenced in the way the judge is supposed to be influenced. He considered the guidelines as part of the 3553A analysis. Well, maybe I should ask the broader question. On this record, where he is even acknowledging that the current science has largely displaced the science and the empirical evidence that the guidelines are based on, and where the government has at least acquiesced in two cases where judges have come up with different ratios and not even appealed, wasn't he obligated to do more than say, I'm taking these guidelines into account? No, he's not obligated. Isn't it an abuse, almost comes down to an abuse of discretion to rely on what is essentially being recognized as an irrational guideline? No, it's not. It's not an abuse of discretion to say, I think that this guideline may not appropriately reflect the proper sentence for this defendant, but I don't have enough evidence in front of me to figure out what an appropriate new ratio would be. One of the things he said he didn't have, which is apparently available and may have been available to him, although he may not have known it, was the extent of empirical evidence regarding the extent to which these guidelines have not been followed nationally. And the empirical evidence that's cited, I guess, in the briefs suggests a wide, a large number, 72 percent, don't hold me to the number, of cases in which there were downward departures in this area. Well, I think the court did not have access to that information. That is clear from the record, but the point is that… It's not clear from the record that he couldn't have called up the sentencing commission and got it, but that's neither here nor there. We now know what it is. And it seems to me that what you have is the judge taking into account, in imposing sentence, a guideline range that's totally unsupported and unjustified, and that the Department of Justice, by the way, in two cases now, reading the letters, there's Judge Pauly's case, which is not in the letters, and there's a 28J letter, which suggests another case, where the government has essentially acquiesced in judges setting new ratios. Isn't it time for the Department of Justice, again, this is one agency, to take a position on this instead of allowing judges to do what they want based on a premise that seems to be not disputed by the department? In one case, they quote, I don't know if I have the letter here, they quote the department as saying that it had nothing to dispute the evidence supplied by the defendant that these guidelines are totally unjustified. Your Honor, I'm not defending the positions that other U.S. attorney's offices have taken in different cases around the country. The issue in this case is not whether the guidelines are flawed. What the judge thought about was if he set a different ratio and have the judges all over the place at different ratios, then you wouldn't have uniformity, which has gone down the drain a long time ago. But I don't understand, this is, you know, you're not, these U.S. attorney's offices operate independently, but you're still, the Department of Justice still makes overall policy and it's in a time for the department to make some policy about exactly how this guideline should be applied if it can't, if it has no evidence to justify and rebut the evidence that's been offered regarding the soundness of the commission's determination. Well, there's multiple questions in there, Judge Corman. I'm going to try and address all of them. First of all, I'm not authorized to comment on the department's policy with regard to this particular guideline or the continuing validity of this guideline and why the department hasn't authorized a particular uniform policy. I don't have any specific instructions. If you would have asked, they might have authorized you, but go ahead. I did ask, Your Honor. I did not receive one. And you should answer Judge Corman's question as best you can and then I have a related question, so please go ahead. I think the issue here is not whether this guideline is flawed or not, and I disagree that it's undisputed that this guideline is, in fact, flawed. I think there's reasonable argument to be had over whether this guideline continues to reflect appropriately the range that should be applied in these types of cases. I don't agree that it's clear and that everyone agrees that this guideline is, in fact, flawed. I don't think that... Did you refresh my recollection? They put in, essentially, the record before Judge Pauley? Yes, and we countered that with criticism of that record and criticism of those studies. The issue in this case, though, is whether the district court, when faced with all this, what was the appropriate path that the district court could take? And what did you argue, the government argue, in this case? Did you defend the ratio? We did defend the ratio. We also said that the judge, we acknowledged the judge had the discretion to adopt a new ratio if the judge wanted, but that the judge could also exercise this discretion by simply considering all of this evidence as part of the overall 3553A analysis and saying, does this guidelines range for this defendant, defendant Camper, provide a sentence that is sufficient but no greater than necessary? And that's what the judge did. And I think the point is that the judge was free to make that choice. Just because Camper and Spears gave the judge the authority to adopt a new guidelines ratio did not mean that the judge had to adopt a new guidelines ratio. The judge here said, Judge Collier considered this and said, look, I don't feel like I have enough information in front of me to adopt a new specific number. But what I am going to do, because I do want to consider this, is I'm going to consider this as part of the 3553A analysis. I think that Judge Collier did here exactly what a district judge should do when he's not in a situation where he feels comfortable or he feels like it's appropriate to adopt a new specific ratio number. The judge, I mean, I think what we have here is a situation where the district court didn't exercise this discretion in the precise manner that the defendants wanted. That's not an abuse of discretion. The district judge exercises discretion. Discretion is a thing that can be exercised differently. One judge is going to view an argument and be persuaded by it. Another judge might not. And what we have here is the judge had two different courses of action it could take in response to this argument. And it chose one. And that was a reasonable course for it to take. Judge Moore, you indicated you had a question along these lines. I'm concerned about what the Department of Justice's position was in this case at the district court level. What the Department of Justice's position is in this case now on appeal given that there are cases where it appears that assistant U.S. attorneys in other cases are not defending this ratio and in fact are acquiescing, if not enthusiastically agreeing that there should be a much lower ratio. And so, obviously I'm not inquiring in terms of attorney-client privilege matter, but I'm left totally unsure that the Department of Justice is acting consistently or appropriately here. Well, let me explain our position in this case to help you understand why it's consistent. Our position below is that we defended this guideline. And on appeal, our position is that the validity of the guideline is not an issue. The issue is how did the district court exercise this discretion properly when considering this argument. So, we're not taking any specific position with regard to the validity of the guideline on appeal because we don't believe that that is an issue in front of this court. The issue in front of this court is how did the district court respond to this argument. Considered an invalid guideline, invalid in the sense that it was unsupported. How can that sentence be justified? I mean, you say you take no position on its validity here, but if it's not valid, how, he obviously, that was the guiding star that guided him in an opposing sentence, which is the commission's, the ratio fixed by the commission from which he departed only by seven months. If it's not valid, then how can that sentence, how can a sentence that's premised on its validity be upheld? Judge Corman, let me respond. Our position is that this court is not, the issue in front of this court is not the validity of the guideline. Why can you say that? What's the basis for your saying that? Because of the standard of review, that this court is reviewing whether the district court abused its discretion in considering this argument. Our position is that we maintain the position from below that this guideline is in fact appropriate. Now, the district court has discretion to consider other evidence and the district court has discretion to disagree with the government's position. If the district court disagrees with the government's position, we accept that because that's the district court's authority. It's within its authority to do so. Our position is, for purposes of this litigation, is that the guideline is valid. I have not been, I understand your concern, Judge Moore, and I do appreciate that it is difficult when different U.S. attorney's offices adopt different positions. I have certain instructions with regard to this case and I'm not authorized to depart from those. I understand your concern. I'm trying to do my best job to respond to it. Are you free to tell us what those instructions are? I'm defending the position that we advocated for in the district court. This guideline continues to remain valid. However, we do think that the district judge, if it felt that the guideline was improper, or we felt that the range that the guidelines produced in this case was not appropriate for this defendant, it had the authority to disagree with that. In fact, it did. It said here, I think that the range provided by the guidelines here is a little bit too high and so I'm going to go down. We're defending the district court's decision to do that because the district court had the authority, it had the discretion to do that. Just because it didn't exercise its discretion in the precise manner that the defendants wanted it to does not mean that it abused its discretion. Let's try it a different way. Why should we, as an appellate court, not require the district court to explain how much it's going to go down based on its disagreement with the extent of the M.A. sentencing guidelines versus how much it's going to go up because of the special involvement that you point out on 1042? We have this one key paragraph on 1042 where the court concludes that the guideline based on the drug quantity is such that the district court's going to determine another sentence is appropriate, but because the involvement was much more serious than the typical leader and whatnot is one of the words, the district court is going to apparently go up a little bit and then we end up with just seven months. Why shouldn't the district court have to explain exactly what it's doing? I see my time is elapsed. You can answer, right. The simple answer is because that would conflict with the precedent that this court has adopted. This court has previously stated that a district court does not have to give the specific reasons as why it departed, say, seven months as opposed to 10 months. It doesn't have to give the specific reasons why it didn't select a further greater departure. It just has to give enough reasons for the court to understand why it did what it did. Here, the court says, look, I think that this guideline range here, because of what all the things you've said, it probably, based on just the drug stuff, provides some things a little bit too high, but there are other factors at play here. These other factors still justify a fairly lengthy sentence. I would say that this is exactly the situation that this court dealt with recently in the, I think it's the Fananavong case, it was cited in one of the 28J letters provided by the defendants, another MDMA case. The court said, there, look, it's totally appropriate for the district court in considering this argument to say, you know what, I don't think that you're, you know, I know you've raised all these arguments against the validity of the drug islands, but there are other things at play here in this case besides just the drug issues. And those things justify the kind of sentence here. And that's exactly what a court's supposed to do under 30-30. The point is, yes, I understand what you're saying, but how do you make a judgment, given what you've talked about are the other factors, he provided the money or he did X and Y, without a rational judgment about how serious the offense is? And when the commission originally made a judgment about that, they came up with a 35-1 and a sentencing guideline range, or I forget what your adversary said, in the 60-month range. And then Congress says, go up higher. So they go up way higher. And there is, the Department of Justice is at the very least acquiescing in that guideline range based on the fact that it no longer has any scientific validity. I mean, how do you make a judgment that 144 is appropriate in light of all of the factors without making some assessment of how harmful the conduct is? And how harmful the conduct is depends on the scientific and empirical evidence that the commission relied on. But I think that the judge did do that. He made an assessment that this conduct here was particularly harmful and that this defendant's behavior- Particularly harmful if he were making talcum powder, he wouldn't say that he would impose, at all things being the same, he wouldn't say that he's imposing 144 months. It's because he was making meth and because the judge was essentially looking to the guideline range that the commission adopted as a measure of the seriousness of the offense. Judge Corman, I think the problem that you're articulating, I mean, this is something that happens all the time. District judges all the time look and say, I think this guideline range is too high. I'm just going to come out with this number. And they give various rather amorphous reasons sometimes for why they think an offense is not particularly serious. This court has never required district courts in the past to say, well, you know, here are all the specific reasons why I think, you know, seven months down as opposed to 10 months down as opposed to 20 months down is appropriate. That's because, you know, these are not, you're not working with a computer here and you're coming up with seven months or eight months and it's not necessary in the ordinary case for the judge to give every reason. And most of these cases are not even appealed. But this case is really different because there's a specific argument that's being made that the guideline itself as it stands today is totally irrational. I may be going overboard in my language. And the Department has acquiesced in other U.S. attorneys, rather other U.S. attorneys presumably with the permission of the Department has acquiesced in that very judgment made by other judges. So how can you, how can you say that he shouldn't, at least the judge shouldn't, and the judge seems to be accepting it. It may well be, as Camper argues, that the current science has largely displaced what the commission relies on. He's obviously just reluctant to second guess the commission. It's not, it's not, it's for Congress and the commission to change it. Those, there's a clear reluctance on his part to recognize the deficiencies in the current guideline range. But that reluctance is within the district court's discretion. The district court does not have to agree with this court as to the validity or the lack of validity of a particular guideline. That's the whole point that the government's trying to make on appeal here is that this is an issue within the district court's discretion. The district court, the record shows the district court considered this argument at length, struggled with it in fact, and after evaluating all of the 3553A factors, not just the guidelines, not just the empirical stuff, but all of these unique characteristics of this specific defendant, came up with a sentence that it believed was sufficient but no greater than necessary. Your argument is that the district, just the district judge is free to into account sentencing a guideline range that is no longer scientifically or empirically supported. No, that's not my position because we don't concede that the guidelines range is no longer scientifically. Assuming the premise of my question. I guess it's hard to assume that premise here because there's not, I think, a situation where it's been universally established where a guideline is... Universally established, you're going to have 97 or 600 district judges. He acknowledges it. The judge acknowledges it. I would really like an answer to my question without getting... I'm trying to, could you please rephrase the question so that I can give the appropriate answer that you want. Is it your position that a district judge can, in an imposing sentence, rely on a guideline that is no longer supported by science or empirical evidence in imposing sentence? A district judge can because not all guidelines are based solely on scientific or empirical evidence. Wait, you're changing my hypothetical and this one it is. Congress said 35 to 1 is not enough, so they go to 500 to 1. They go through a whole exercise to justify it and now it turns out, let's assume, that that exercise is completely wrong and a district judge is still free to follow that guideline range. Judge, I think what I want to point you to is there was actually an extensive discussion during the sentencing hearing about that this guideline was not just incorporating empirical evidence. It was not just about the science, but there was also policy judgments behind Congress's decision to suggest, look, we want this guideline to be higher, so it's not just about the science of MDMA compared to other drugs. It's about broader societal effects. It wasn't based on certain assumptions about the seriousness of meth. Yeah, but the seriousness of a drug is not solely determined by scientific evidence. The seriousness of a drug, also, you have to take into account the effect on the community. Detrimental effect. Yeah, I agree with that. And those go beyond just the science. It's not just about, is this drug particularly harmful to the individuals who are using it, but what kinds of effects does the distribution of this drug have on communities? And that can be different based on the different kinds of drugs, and those differences may have nothing to do with science. They may have to do with the nature of the market for those drugs, and these are all relevant considerations beyond just the empirical scientific evidence. And I think that's the point here, is that there's more at play here than just empirical scientific evidence. There are value judgments, and I think the underlying point is the district court struggled with all these arguments. It considered all of them, which is what it was obligated to do, and it exercised its discretion in a certain way. And just because it exercised its discretion in a way that the defendants don't like, or in a way that this court might disagree with, doesn't mean that it abused its discretion, simply because it exercised its discretion in one particular way that it was authorized to do. Unless there are other questions. Yes, feel free, feel free, yes. If there are other questions, I'm certainly happy to entertain any other questions the bench has. On the obstruction of justice enhancement. Which defendant? For, I believe it's Camper. Yes. The one with the letter. Yes. And at the time that the letter was written, he had already pled guilty. He hadn't yet been sentenced. Was there any evidence that this St. Ange, is that his name, was going to be a witness at sentencing? I mean, he had already testified at trial to everything he knew about this conspiracy. I don't know that there is anything specific in the record that he was planning to testify. I don't think at that point. What I'm getting to is, how did this obstruct justice? Well, this was a. It may be, you may be right, that writing a letter like that may have some implications for whether he gets two points off, or for acceptance of responsibility. But how does it, how does it, how did it obstruct justice? Well, Head's trial had not yet occurred, I would note. And St. Ange was going to be testifying at Head's trial. Was he, was he, did he write that letter to obstruct St. Ange from testifying at Head's trial? Well, I think that the best evidence of why he wrote the letter is to look at the language in the letter. He wrote the letter saying, I mean, the letter itself wasn't the intimidation letter, it was describing what he did. And in the letter he describes that, you know, he's saying all this stuff. Wanted to make life hard for this guy because he, in effect, was responsible for his conviction. And that's why I say that it may be that he's not entitled to two points off for acceptance of responsibility. But I'm somewhat troubled about how it actually obstructed justice. There was a great potential that St. Ange would, in fact, actually have to testify at the sentencing hearing. Because one of the issues that was disputed at sentencing was this managerial role enhancement. And St. Ange provided a lot of the evidence supporting this managerial role enhancement with regard to both Head and also with regard to Camper. And so the fact that St. Ange didn't end up having to testify doesn't mean that, you know, the defendant should get off the hook here. Has the pre-sentence report been written at that time? I actually don't recall off the top of my head. I'd have to look at the date of the pre-sentence report. But I think the point is the enhancement applies when there's a potential. You don't have to actually be successful in your efforts to obstruct justice. It's whether this has the potential to obstruct justice. And I'd also want to point out that this is reviewed under a somewhat deferential standard for the district court here. And I think that given the evidence here, I think it's really clear that what this individual, who was instrumental in Camper's prosecution and sentencing. And I think that that's precisely the kind of conduct that the obstruction of justice enhancement is meant to get at. And I think it's appropriate to apply it in this case. What about with respect to Head? My understanding is there's an argument that the district judge failed to make findings regarding perjury, which are required under the case law. Is that, what is your position? Our position is, well, first of all, we think that the finding is sufficient. The defendant makes a lot of this Macias-Farias case, the recent case. That didn't really change anything with regard to the law. The specific facts of that case, the problem in that case was that there was like this whole slew of things that the government said that the defendant did at trial or said at trial that were problematic. And the district court said, yeah, he just, you know, he made one big lie. And didn't identify with any specificity, yes, you made this statement, this statement was perjurious. And here we have a specific finding. You made this statement. This statement constitutes a perjury. And weren't the subsequent requirements not identified by the district judge? So the materiality and the third? I think the materiality and the willfulness is implicit in the district judge's finding that it's material. And we would submit that even... Where is it implicit? All I see is finding that there's... That it was false. I don't see it. Where is it implicit that he finds that it's material and made with intent? But I think by him... Willful intent to provide the false testimony. I think by him calling it perjury, he's implicitly saying it has all these elements. And I'll agree, Judge, if you are concerned that he didn't actually go through the proper... He didn't state on the record, okay, well, this is willful and this is material. We submit that that's harmless error in this case because it's obvious. I mean, and again, this is being reviewed under a plain error standard because the defendant didn't raise this issue below, didn't object and say, hey, you didn't make the required findings on the record. So this is being reviewed for plain error. And the last two prongs of the plain error standard that affects defendant's substantial rights and impacts the fairness, integrity, the public reputation of the judicial proceedings. I don't think a district court's failure to mention that a defendant's statement about a lie about not manufacturing MDMA is material in his prosecution for manufacturing MDMA. It seems to me that it's fairly obvious that that's a material statement. So to the extent that there was a violation of the procedural requirements, we would submit that it is harmless error and does not satisfy the plain error standard in this case. Thank you. Your Honors, for one thing, I want to just urge caution about this word value judgments that Mr. McLaurin brought up. Each of the factors that Congress told the Commission to look at and each of the factors that the Commission said it looked at are verifiable, statistical, medical. They are either scientific or statistical. Value judgments should not be allowed to cover that up. I also want to point out that Mr. McLaurin said that the judge said that he didn't have enough information. Actually, what the judge said at pages 607 and 608 was that he didn't have the only kind of information that he would accept, which would be either data showing that more than 50 percent of cases were below the guideline range, or a study from the Commission, or in a footnote he said some suggested alternative ratios from the Commission. How would you distinguish this case from Thanavong? I would distinguish this case from Thanavong in that the judge in Thanavong, the judge said these policy considerations are relevant. In other words, he didn't write a written opinion announcing to the world that he thought the judges don't have authority or competence to do these things. He said, I believe these considerations are relevant. I've considered them. But given the aggravated nature of this offense, which it was much more aggravated than this one, there were about 36,000 MDMA pills where in this case it amounted to 3,000 or 4,000. There were also a few hundred kilograms of marijuana, I think, and a lot of weapons and money. But he said given these super aggravated circumstances, this takes this out of the realm of this, what did he say, something about it implicates a different set of dangers than the health effects of MDMA. But arguably, that page 1042, I think it is, where the district judge here says, yeah, I'm going to take these factors into account about the MDMA ratio being too high, but Camper, you're a bad guy. I'm going to sentence you because you're a bad guy. Well, again, you know, he had already given him a four-level enhancement for roll when he also found that Camper had an equal role with, well, I won't get into that right now, but he did not play a particularly aggravated role. But besides that, the judge did not disagree with this guideline. He stated in his written opinion, Congress is in an infinitely better position to make such determinations. The court will defer to the guidelines and decline to impose a non-guideline sentence based upon arguments as to the seriousness of one drug relative to another. That's pretty clear. That is announcing that it's improper. Thank you. I'll just take a brief moment to address the government's argument on the two-point obstruction enhancement. I don't think that this is subject to plain error review. Mr. had clearly objected at all relevant times in his sentencing memorandum and at the sentencing proceeding itself to the two-point enhancement. He could not have cited Macias-Farias to the district court because he was sentenced in June of 2012. Macias-Farias is decided just this year in February. So there's intervening case law there that the district court didn't have the opportunity to take account of. And second, I don't think it was harmless error. The explicit lesson of Macias-Farias is that the predicate findings of perjury, the falsity of the statement, the materiality and willfulness have to be expressly and specifically found by the district court. Macias-Farias says plainly it cannot be presumed. They cannot merely be implicit. So I think that that two-point enhancement does need to be reversed and go back to the district court for those findings. Thank you. Thank you. Thank you all for your argument. The case will be submitted. And Ms. Ehlert, I see that you're appointed pursuant to the Criminal Justice Act. And we thank you for your representation of your client in the interest of justice. The case will be submitted. Are there any further cases?